UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

CRIMINAL CASE No. 04-CR-10350-RCL

---

UNITED STATES

v.

JOSEPH CALCAGNO

---

**DEFENDANT'S SENTENCING MEMORANDUM**

---

The defendant, Joseph Calcagno, respectfully submits this memorandum to aid the Court in fashioning an appropriate sentence. It is the defendant's position that a sentence of two years probation, the first six months on home detention, would best achieve the basic purposes of criminal punishment, *i.e.*, deterrence, incapacitation, punishment, and rehabilitation. *See* 18 U.S.C. § 3553(a).

## I.    OVERVIEW.

On April 27, 2005, Joseph Calcagno pleaded guilty to a one count misdemeanor of Falsification of Financial Records Required to be Kept by a Labor Union, in violation of 29 U.S.C. 439(c). The maximum permissible sentence under the statute of conviction is a one-year term of imprisonment. Probation is an authorized sentence, but the term of probation may not exceed five years. 18 U.S.C. §§ 3559(a), 3561(c).

The applicable guideline is U.S.S.G. § 2E5.3 (2004 ed.). Using the November 1, 2004 Guideline Book, the defendant contends that the guidelines are calculated as follows:

| | | |
|---|---|---|
| Base Offense Level | 2E5.3 | +6 |
| Specific Offense Characteristic | 2B1.1(b)(1)(D) | +6 |
| Abuse of Position of Trust | 3B1.3 | +2 |
| Acceptance of Responsibility | 3E1.1(a) | -2 |
| Total Offense Level | | 12 |

The defendant's calculation is one level lower than the Probation Department's. The defendant contends that the loss is less than $70,000. The Probation Department has determined that the loss is more than $70,000 but less than $120,000. The defendant objected to the Probation Department's calculation. See Objection No. 7 to Revised Presentence Report. Exhibit A.[1] The Probation Department did not address the defendant's objection, merely noting that the defendant would submit his calculation to the Court. A complete copy of the defendant's loss calculation that was submitted to the Probation Officer is attached hereto as Exhibit A.

Under the defendant's calculation, the Guideline Sentencing Range would be 10 to 16 months (Zone C), while the Probation Department's range would be 12 to 18 months (Zone D).

## II . THE LOSS CALCULATION.

The Probation Department's loss calculation, which is identical to the Government's, is found at PSR, 9/12/05, ¶¶ 9, 13-14. Those figures do not take into account a significant number of authorized expenditures, as set forth below. This Court should adopt the defendant's Proposed Substituted Loss Calculation for the reasons that follow. The fundamental difference is that the

---

[1]     The Probation Officer inadvertently did not insert the first sentence of that objection in the Presentence Report. That sentence states. "The defenant objects to the calculations of loss and restitution owed found at Page 3, ¶¶ 13-15 and Page 16, ¶ 88.

defendant was not given credit for a fixed monthly expense allowance that was authorized by the union, as conceded  by both the government and the Probation Department.

According to the Probation Department, and the Prosecution Version of Offense Conduct, upon which the Presentence Report is largely based, "Calcagno was paid approximately $325 per month.  Calcagno was also paid a flat rate of expenses of $550 per month for his position as Business Manager and an additional $550 per month for his position as Secretary-Treasurer."  *See* PSR, 9/12/05, ¶ 9; Prosecution Version of Offense Conduct, 05/18/05 (attached hereto as Exhibit B), p. 2.

The loss calculation worksheet prepared by the Government and adopted by Probation in arriving at the loss figure includes an "adjustment for authorized pay" of $300 per month per year from 1997 through 1999.  *See* Government's November 2004 Loss Calculation Worksheet (attached as Exhibit C).  This $300 adjustment falls $25 short of Mr. Calcagno's reported monthly salary of $325.  In addition, the loss calculations do not take into account the "flat rate of expenses of $550 per month for his position as Business Manager and an additional $550 per month for his position as Secretary-Treasurer" which was reportedly authorized.  If that adjustment is accepted, then **$40,500** should be subtracted from the total loss for fixed payments. [($25 + $550 + $550) × 12 months × 3 years].  That adjustment itself would bring the loss figure below $70,000, since the Probation Department's loss figure is $108,910.61.

In Exhibit A, the defendant sets forth a variety of other alleged losses which he challenges. Those items total $18,687.51.  Resolution of those items is not necessary for a guideline calculation, since they would not bring the defendant to a lower sentencing range.  They may be relevant to restitution.

### III.    JOSEPH CALCAGNO'S PERSONAL CHARACTERISTICS.

####    A.    Mr. Calcagno Himself.

As set forth in the Presentence Report, Mr. Calcagno is a 54 year old man with no prior criminal conviction. His physical condition is substantially debilitated. Records from Mr. Calcagno's primary care physician, Dr. Jane Butlin at Bridgewater Goddard Park Medical Associates, indicate that he suffers from "Extensive degenerative arthritis" throughout the cervical and lumbar spine.[2] After a course of physical therapy failed to alleviate Mr. Calcagno's pain, he was referred to Orthopedic Surgeon Dr. Paul Glazer at the Shapiro Clinical Center, 300 Brookline Avenue, Boston. Dr. Glazer has referred Mr. Calcagno for a course of nonoperative intervention for degenerative disc disease, and has suggested that surgical intervention may follow if the nonoperative intervention fails to alleviate Mr. Calcagno's symptoms.[3]

Complicating the treatment of Mr. Calcagno's degenerative disc disease is his Bilateral Bells Palsey, a rare condition involving numbness and paralysis of Mr. Calcagno's face, difficulty closing the left eye, numbness and drooping of the left side of the face, headaches, difficulty eating, and loss of coordination and strength through the left side of the body.

The administration of treatment for this unusual and painful combination of symptoms would be cumbersome and expensive for a prison facility. Particularly if Mr. Calcagno is to require neck

---

[2]    The defendant submitted voluminous medical records of himself and his family members to the Probation Officer.

[3]    After submitting his objections and the medical records to the Probation Officer, the defendant obtained an August 20, 2005 record from Dr. Glazer, which is attached as Exhibit D.

surgery, home detention would be far less costly and more beneficial to Mr. Calcagno's recovery and rehabilitation than imprisonment. *See* U.S.S.G. § 5H1.4 (governing departures for the offender's physical condition); 18 U.S.C. 3553(a)(2)(D)(sentence should be crafted to provide defendant with needed medical treatment in most effective manner possible).

### B.    Mr. Calcagno's Family Circumstances.

Mr. Calcagno's family is plagued by a variety of serious health concerns, requiring his care and attention to an unusually high degree.  The conditions of each of the family members is discussed in detail in the objection to the Presentence Report.

**Ivy Calcagno**, Joseph Calcagno's mother, is a 78 year old woman with a host of debilitating medical problems.  Her current conditions include, among other things: hearing loss; goiter; Fibrocystic Breast Disease; hyperlipidemia; hematuria; fatigue; anxiety; and hypertension.  Her hearing loss is near complete loss. Her anxiety resulted in a hospitalization and a subsequent stay at a rehabilitation center in the fall of 2004, at the time when she learned that the United States was instituting a criminal case against her son.  She also underwent a total abdominal hysterectomy in June, 2005, after ovarian cysts were discovered.  The findings were benign.

Mr. Calcagno is largely responsible for his mother's care.  They speak at least once a day, and she calls him in the event of any emergency, real or imagined (her anxiety prompts many of these calls). He does her food shopping every week, and brings in her medications.  He also makes social visits at least once a week, since she has been housebound for some time.  Mr. Calcagno also brings his mother to her frequent medical appointments.  Were it not for the pendency of this case, Mr. Calcagno would have taken his mother into his house this past year.  As soon as Mr. Calcagno becomes available, Mrs. Calcagno will move in with him and his wife.

-5-

Mr. Calcagno is also required to assist his wife, **Donna Calcagno**, who suffers from persistent depression and anxiety, as well as chronic back pain and numbness of the extremities. She has been treated for her depression and anxiety since approximately 2001 by her primary care physician. She has been prescribed Wellbutrin and is currently taking Celexa for these symptoms. She has been evaluated and treated for the back pain and numbness in the hands and feet by numerous practitioners since approximately 2003. She was seen most recently by Dr. David Weinberg at the Caritas St. Elizabeth's Medical Center who found a "conduction block in the right median nerve" and a "mild polyneuropathy." He suggested spinal fluid evaluation and possible repetition of EMG testing.

As a result of these medical conditions, Mr. Calcagno is called upon to drive his wife to her medical appointments, and to care for her when she is ill. She has frequent falls, due to the pain in her legs, and some are severe enough to immobilize her for a time. Mr. Calcagno must also perform a great deal of the housework, since his wife's capabilities are impaired, and must do all errands that require driving. In addition, Mr. Calcagno helps his wife care for her son, Paul Doyon, who lives with them.

**Paul Doyon**, Donna Doyon Calcagno's thirty-four year old son, was the victim of an assault and battery in approximately 1999, and developed a post-traumatic seizure disorder thereafter. Paul Doyon also suffers from panic attacks and anxiety, which are thought to be associated with the seizure disorder. He is treated for the latter symptoms by a psychiatrist, Dr. Jeffrey Wielberg of Massachusetts General Hospital, and is prescribed anti-depressant medication.

Although Paul Doyon is employed full time and his convulsions are, at this point, infrequent, Mr. Calcagno and his wife are called upon to assist him with his medical needs. They help

administer his seizure medications and anti-depressant medications. His panic attacks come frequently, sometimes waking the family and requiring their attention through the night. He often becomes sick with severe headaches. They look after him, and, when anxiety and panic strike, they are required to help him attend his job and remain productive and active.

## IV.    THE COURT SHOULD DOWNWARDLY DEPART BASED UPON EXTRAORDINARY FAMILY CIRCUMSTANCES.

Under the sentencing guidelines, the Court can depart based upon family circumstances. USSG § 5H1.6. While that is a discouraged departure, and the caselaw is not hospitable to such departures, the defendant contends that he in fact meets them. See United States v. Roselli, 366 F.3d 58, 68 (1st Cir. 2004)(reviewing cases, and affirming downward departure where the care provided by the defendant is "irreplaceable or otherwise extraordinary." Id. at 69); United States v. Louis, 300 F.3d 78 (1st Cir. 2002)(affirming denial of departure by this Court); United States v. Bogdan, 284 F.3d 324 (1st Cir. 2002)(reversing departure based on combination of factors where one of the factors was family circumstances); United States v. Pereira, 272 F.3d 76 (1st Cir. 2001)(reversing departure because appellate court could not say that defendant was "irreplaceable"); United States v. Thompson, 234 F.3d 74 (1st Cir. 2000)(reversing departure because district judge compared defendant's circumstances to other drug defendants, rather than to population as a whole); Untied States v. Sclamo, 997 F.2d 970 (1st Cir. 1993)(affirming departure because case was an unusual one warranting departure).

In this case, Mr. Calcagno meets the onerous test – he is irreplaceable to his family's well-being. It is clear that Mr. Calcagno is vital to the well-being of his family unit, including Ivy

Calcagno, Donna Doyon Calcagno, and Paul Doyon. It is difficult to conceive of how this family will manage without his assistance, particularly since he is the only person who drives. Without Mr. Calcagno, the responsibility of caring for his aged mother would fall to Donna Calcagno, who is not only in need of assistance herself, but already burdened with the care of her son. Mr. Calcagno is seriously concerned that his mother could not survive without his assistance for any prolonged period of time. If Mr. Calcagno is placed on probation and allowed to remain in his home, his mother will come to live with the rest of the family, which would inevitably improve her health and lessen the currently immense burdens on Mr. Calcagno and his wife.

Given the essential role that Mr. Calcagno plays in his family, the Court should downwardly depart two levels to Zone B, and impose a sentence of two years probation, with the first six months to be spent on home confinement. That sentence would allow Mr. Calcagno to continue caring for his family members

## V.     UNDER 18 U.S.C. § 3553(a), THE COURT SHOULD GRANT A VARIANCE FROM THE GUIDELINE SENTENCE.

Under United States v. Booker, 125 S. Ct. 738 (2005), the guidelines are advisory, and the Court can vary from the guidelines if it deems that appropriate under the governing statute, 18 U.S.C. § 3553(a). Under that statute, a sentence should be sufficient, but no greater than necessary, to comply with the factors that must be considered in imposing a sentence.

The defendant's characteristics and his circumstances have been reviewed in detail above. Certainly if the Court does not consider his circumstances sufficiently unique to qualify for a downward departure, they merit consideration for a variance from the applicable guideline

sentencing range.

To be sure, the offense, although a misdemeanor, is a serious one. He violated a position of trust and ruined a long and dedicated career as an advocate for public employees in Southeastern Massachusetts. Over the years he made many important contributions to the union's welfare. Because he took advantage of his position, Mr. Calcagno lost his job, he lost his pension because he used it to repay the union, he has been publicly humiliated, and he has pled guilty before this Court. In addition, he has brought shame on his family and feels tremendous guilt for, among other things, the pain he has brought on his family.

The aftermath of his crime will surely serve as a deterrent to others. There little likelihood that the defendant will re-offend. Finally, as noted above, the defendant's own medical needs can best be addressed by his own physicians rather than in a Bureau of Prisons facility.

## CONCLUSION

For the foregoing reasons, the defendant urges the Court to impose a sentence of two years probation, the first six months of which should be served on home confinement. The defendant asks the Court to impose a fine at the low end of the applicable guideline, and a $25 special assessment. The Court should also order that restitution be made, and that the amount determined in the Presentence Report, $66,632.28, should be reduced by the $40,500.00 (for the reasons described above is section 1 of this memorandum) and by an additional $18,687.51 set forth in that same section, for a restitution amount of $7,444.77.

Respectfully submitted
The defendant Joseph Calcagno
By his attorney

/s/ Charles W. Rankin

_____
Charles W. Rankin
BBO No. 411780
Rankin & Sultan
1 Commercial Wharf North
Boston, MA 02110
(617) 720-0011

# RANKIN & SULTAN

## ATTORNEYS AT LAW

CHARLES W. RANKIN
JAMES L. SULTAN
CATHERINE J. HINTON
———
MICHELLE MENKEN
JONATHAN P. HARWELL

ONE COMMERCIAL WHARF NORTH
BOSTON, MASSACHUSETTS 02110
(617) 720-0011
———
FAX (617) 742-0701
EMAIL OFFICE@RANKIN-SULTAN.COM

August 30, 2005

Ina Howard-Hogan
U.S. Probation Officer
Moakley U.S. Courthouse, Suite 1200
1 Courthouse Way
Boston, MA 02210

Re:    **Joseph Calcagno, No. 04-10350-RCL**

Dear Ms. Howard-Hogan:

Enclosed please find Mr. Calcagno's Objections to Presentence Report, as well as his alternative loss calculation. I have also enclosed documents that are referred to in the materials.

Sincerely,

Charles W. Rankin

Cc:    AUSA Paul Levenson

**Exhibit A**

# JOSEPH CALCAGNO

## OBJECTIONS TO PRESENTENCE REPORT

---

1.    <u>Custodial Status</u>

On Page 2, the presentence report mistakenly states that Mr. Calcagno was released "on Personal Recognizance with restrictive conditions." In fact, there were no restrictive conditions.

2.    <u>Criminal Convictions</u>

On Page 6, ¶ 30, the presentence report incorrectly states that Mr. Calcagno was convicted on Breaking and Entering in Plymouth Superior Court. In fact, Mr. Calcagno was found not guilty of that crime. (A copy of Plymouth Superior Court Docket # 55293 is attached). He has no criminal convictions.

3.    <u>Substance Abuse</u>

Page 10, ¶ 60 mistakenly states that Mr. Calcagno reported that he had used cocaine five times in his life, most recently about four or five years ago. In fact, he has never used cocaine. What he told probation was that he used marijuana four to five times about 25 years ago.

4.    <u>Assets</u>

On Page 12, ¶ 68, the presentence report states that defendant's equity share in his home is

-1-

$42,033, or the total of the Fair Market Value minus the Mortgage Amount. The house is a marital asset, regardless of whether the house is in Mr. Calcagno's name alone, pursuant to Mass.Gen.Laws c. 208, § 34. By law, Mr. Calcagno's current interest in the house is 50% of the equity share, or $21,016.50.

5.    Physical Condition

a)    Pages 9-10, ¶¶ 53-54, reference Mr. Calcagno's back and neck pain. Up-to-date medical records from Mr. Calcagno's primary care physician, Dr. Jane Butlin at Bridgewater Goddard Park Medical Associates, indicate that he suffers from "Extensive degenerative arthritis" throughout the cervical and lumbar spine. (See Butlin Records, 02/18/2005 radiology report, attached). After a course of physical therapy failed to alleviate Mr. Calcagno's pain, he was referred to Dr. Glazer for continuing, severe, back, leg, and neck pain. (See Butlin Records, 06/10/05 service, attached). Dr. Glazer, an orthopedic surgeon at the Shapiro Clinical Center, 300 Brookline Avenue, Boston, has recommended neck surgery. (Awaiting medical records). Dr. Glazer has also referred Mr. Calcagno to the Pain Management Center at Beth Israel Hospital in Boston, and to a two-month course of physical therapy.

b)    Page 10, ¶ 55 references Mr. Calcagno's February 2005 diagnosis of Bells Palsy. The Dr. Butlin records confirm that Mr. Calcagno contracted Bells Palsy, resulting in numbness and paralysis of the right side of his face. The records also indicate that in June 2005, Mr. Calcagno began to experience the same symptoms on the left side of his face. (See Butlin Records, 06/15/05 service, attached). This rare condition is

-2-

known as Bi-lateral Bells Palsey, and has resulted in difficulty closing the left eye, numbness and drooping of the left side of the face, difficulty eating, and loss of coordination and strength through the left side of the body. There is no known cure for Bells Palsy; steroid treatments help minimize his symptoms. He also has begun a course of neurological testing to rule out other possible causes of his symptoms.

3.    Financial Condition - Ability to Pay

Pages 12-13, ¶¶ 67-70, discuss Mr. Calcagno's financial condition. This discussion should include information regarding Mr. Calgagno's financial responsibility for his mother, Ivy Calcagno (*see* ¶ 8). Mrs. Calcagno lives alone in the Bel Air Towers, a public housing development of the Brockton Housing Authority. She is unmarried. She has one other child, a daughter, with whom she rarely speaks due to the daughter's persistent substance abuse. She has no other family. She was orphaned and raised in foster care. Mrs. Calcagno's gross annual income is less than $7,000 per year, comprised of her Social Security checks – $379.00 per month – and a small pension from her career as a part-time cafeteria worker in the Brockton Public Schools – $194.64 per month. She pays $220.00 per month in rent. This leaves her approximately $4,248 per year, or $354 per month. She is otherwise entirely dependent on Mr. Calcagno. He pays for her groceries, her prescriptions, and many incidentals. Mr. Calcagno estimates that he spends $500 per month for his mother's assistance, on average, over the course of a given year.

4.    Offense Conduct/Victim Impact/Restitution Owed/Impact of Plea Agreement

The defendant objects to the calculations of loss and restitution owed found at Page 3, ¶¶ 13-

15, and page 16, ¶88. The defendant has not agreed, as the Presentence Report states, that the aggregate loss caused by the defendant was greater than $70,000 (*see* Page 14, ¶ 73). He has only acknowledged that this is the Government's position. The defendant's proposed substituted calculation of loss is attached.

5.    Factors That May Warrant Departure

There is no information presented to indicate that a departure may be warranted (*see* Page 17, ¶ 91). In fact, a departure may be warranted in this case on the ground of Extraordinary Family Circumstances. Mr. Calcagno is the patriarch of a family plagued by serious health concerns, requiring his care and attention to an unusually high degree. The conditions of each of the family members is discussed individually below.

Ivy Calcagno

Ivy Calcagno, Joseph Calcagno's mother, is a 78 year old woman with a host of debilitating medical problems. According to the medical records from her primary care provider, Dr. John Diorio at Compass Medical in Brockton, her current conditions include, among other things: hearing loss; goiter; Fibrocystic Breast Disease; hyperlipidemia; hematuria; fatigue; anxiety; and hypertension. (*See* Compass records, 08/05/05 service, attached). Her hearing loss is near complete loss. Her anxiety resulted in a hospitalization and a subsequent stay at a rehabilitation center in the fall of 2004, at the time when she learned that the United States Government was instituting a formal criminal case against her son. (*See* Compass records, 10/13/04, 10/25/04, 12/08/04 service, attached). She also underwent a total

-4-

abdominal hysterectomy in June, 2005, after ovarian cysts were discovered. (*See* Ramaswami records, 06/08/05 pathology report). The findings were benign.

Mr. Calcagno is largely responsible for his mother's care. They speak at least once a day, and she calls him in the event of any emergency, real or imagined (her anxiety prompts many of these calls). He does her food shopping every week, and brings in her medications. He also makes social visits at least once a week, since she has been housebound for some time. *See* Compass records, 01/07/05 service, attached. Mr. Calcagno also brings his mother to her frequent medical appointments. Were it not for the pendency of this case, Mr. Calcagno would have taken his mother into his house this past year. As soon as Mr. Calcagno becomes available, Mrs. Calcagno will move in with him and his wife.

### Donna Doyon Calcagno

Mr. Calcagno is also required to assist his wife, Donna Calcagno, who suffers from persistent depression and anxiety, as well as chronic back pain and numbness of the extremities. She has been treated for her depression and anxiety since approximately 2001 by her primary care physician, Dr. Kerry Girard of Primary Care Affiliates in Bridgewater. (*See* Girard records, attached). She has been prescribed Wellbutrin and is currently taking Celexa for these symptoms. She has been evaluated and treated for the back pain and numbness in the hands and feet by numerous practitioners since approximately 2003 (*See* Girard records, Martin records, and Ackil records, attached). She was seen most recently by Dr. David Weinberg at the Caritas St. Elizabeth's Medical Center who found a "conduction

block in the right median nerve" and a "mild polyneuropathy." (*See* Weinberg records, 05/25/05 service, attached). He suggested spinal fluid evaluation and possible repetition of EMG testing.

As a result of these medical conditions, Mr. Calcagno is called upon to drive his wife to her medical appointments, and to care for her when she is ill. She has frequent falls, due to the pain in her legs, and some are severe enough to immobilize her for a time. Mr. Calcagno must also perform a great deal of the housework, since his wife's capabilities are impaired, and must do all errands that require driving. In addition, Mr. Calcagno helps his wife care for her son, Paul Doyon, who lives with them. His medical conditions are described below.

<u>Paul Doyon</u>

Paul Doyon, Donna Doyon Calcagno's thirty-four year old son, was the victim of an assault and battery in approximately 1999, and developed a post-traumatic seizure disorder thereafter. He is treated for his seizure disorder by Dr. Edward Bromfield of Brigham and Women's Hospital. (*See* Bromfield records, attached). Paul Doyon also suffers from panic attacks and anxiety, which are thought to be associated with the seizure disorder. (*See* Bromfield records, Healy records, attached). He is treated for the latter symptoms by a psychiatrist, Dr. Jeffrey Wielberg of Massachusetts General Hospital, and is prescribed anti-depressant medication. (*See* Bromfield records, Healy records, attached).

Although Paul Doyon is employed full time and his convulsion are, at this point, infrequent, Mr. Calcagno and his wife are called upon to assist him with his

-6-

medical needs.  They help administer his seizure medications and anti-depressant medications.  His panic attacks come frequently, sometimes waking the family and requiring their attention through the night. He often becomes sick with severe headaches.  They look after him, and, when anxiety and panic strike, they are required to help him attend his job and remain productive and active.

It is clear that Mr. Calcagno is vital to the well being of his family unit, including Ivy Calcagno, Donna Doyon Calcagno, and Paul Doyon.  It is difficult to conceive of how this family will manage without his assistance, particularly since he is the only person who drives.  Without Mr. Calcagno, the responsibility of caring for his aged mother would fall to Donna Calcagno, who is not only in need of assistance herself, but already burdened with the care of her son.  Mr. Calcagno is seriously concerned that his mother could not survive without his assistance for any prolonged period of time.  If Mr. Calcagno is placed on probation and allowed to remain in his home, his mother will come to live with the rest of the family, which would inevitably improve her health and lessen the currently immense burdens on Mr. Calcagno and his wife.

**JOSEPH CALCAGNO**

**AUTHORIZED EXPENDITURES**

1. Home Office Expenses

It was Joseph Calcagno's understanding that in order to carry out his duties as Business Manager and Secretary Treasurer of Local 1162, he was authorized to use the Union's funds to cover any and all necessary expenses. Mr. Calcagno's daily business activities included: creating, producing and distributing flyers; creating, submitting, and following-up on numerous FOIA requests; corresponding with members and potential members by telephone and by mail; corresponding with the Local Union's office staff several times per day; corresponding with approximately 80 other local Union offices; corresponding regularly with the District Council Office; and corresponding with the International Office. The Local office had little or no technological capacity, so, with the knowledge and assent of the Local Union's officers, Mr. Calcagno established a home office.

At first, many years ago, Mr. Calcagno's home office consisted of his home telephone (there was only one line, shared by the family) and a single computer financed by an area bank. In the 1990's however, it became clear that the Local Union needed to centralize and computerize its activities. The District Council strongly urged such computerization; there were seminars, conferences, contests, and awards for best web site, and the Local Unions were encouraged to purchase software that would increase the efficiency and reliability of the local offices' operations. The task of computerizing the Local 1162 fell to Mr. Calcagno as Business Manager and Secretary Treasurer. It was Mr. Calcagno's responsibility to computerize all of the Local's records, and to make them accessible by internet. He consulted a computer technician in Bridgewater who advised that he set up three computers: one to house the firewall, one as a data server, and one personal computer for his daily business activities. Mr. Calcagno did so. He created data bases of every member with their addresses and pertinent information and every employee with their addresses and pertinent information. He created data bases of every collective bargaining agreement ever initiated by that office,[1] every legal communication, briefs, arbitration cases, and every grievance ever initiated. These were to be searchable databases, accessible and navigable by internet.

---

[1] Collective bargaining agreements had previously been maintained by the municipalities. The Union wanted to maintain their own collective bargaining agreements so that they could be easily accessed and utilized in litigating future agreements.

1

Ultimately, Mr. Calcagno's office came to occupy two rooms in the basement of his home. He had a desk, bookcases, volumes of the Massachusetts General Laws and Union regulations and policies, a copying machine, a scanner, a fax machine, an ISDN term adaptor, computers, printers, a telephone line used for the ISDN, a telephone line used for the fax, and a single land-line used both as a work phone and the sole home telephone. He also had a cellular telephone. Other than the shared land-line, this equipment was used exclusively for union business activities. The equipment was all necessary in order to fulfill his responsibility to modernize the Local's operations. At no time did Mr. Calcagno start up an independent "computer service business" (see PSR ¶ 10). Instead, he devoted himself entirely to his work for the Union. It was Mr. Calcagno's understanding that the Union knew of and authorized the expenditure of union funds to cover his authorized technical operations.

After Mr. Calcagno was forced to cease these operations, the functioning data server was returned to the Local Union. The entire remainder of the office equipment was packed in boxes, and remains stored in Mr. Calcagno's garage ready to be picked up.

The expenditures listed below are drawn from a chart compiled and used by the Government to calculate the loss figure in this case. These particular entries reflect costs incurred to maintain the home office. Since these expenses were authorized, and were incurred in furtherance of Mr. Calcagno's duties to the Union, they should be subtracted from the total loss amount.

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 01/24/97 | 02/03/97 | 1340 | $128.27 | Nynex | 508-697-7011 |
| 02/24/97 | 03/05/97 | 1343 | $388.20 | Nynex | 508-697-7011, 508-697-3714 |
| 04/15/97 | 04/17/97 | 1358 | $312.48 | Circuit City | Telephone 117513 |
| 05/23/97 | 05/28/97 | 1373 | $450.38 | Nynex | 508-697-3714, 508-697-7011, 508-697-1891 |
| 07/01/97 | 07/03/97 | 1395 | $388.48 | Staples | Toner and Software |

2

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 08/20/97 | 08/25/97 | 1409 | $493.02 | Nynex | 508-697-3714, 697-7011, 697-1851 |
| 10/03/97 | 10/24/97 | 1427 | $104.99 | Computer City | |
| 11/26/97 | 12/02/97 | 1449 | $430.86 | Bell Atlantic | 3 numbers listed appear to be the same as other bills |
| 11/30/97 | 12/03/97 | 1448 | $297.77 | Staples | |
| 12/01/97 | 12/10/97 | 1451 | $285.00 | Staples | 7972-8200-0274-9117[2] |

SUMMARY 1997    $3,279.45    AUTHORIZED HOME-OFFICE EXPENSES

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 01/09/98 | 01/26/98 | 1463 | $250.00 | Staples | 7972-8200-0274-9117 |
| 02/10/98 | 02/12/98 | 1473 | $545.96 | Comp USA #373 | |
| 02/22/98 | 02/24/98 | 1476 | $293.98 | Comp USA #373 | Modem |
| 02/23/98 | 02/25/98 | 1477 | $52.50 | Comp USA #373 | Modem |
| 02/24/98 | 02/26/98 | 1479 | $234.97 | NYNEX | 508-697-3714 |

[2] This number reflects the Union's account number at Staples.

3

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 03/23/98 | 04/01/98 | 1489 | $537.59 | NYNEX | 508-697-1891 |
| 04/09/98 | 05/06/98 | 1500 | $49.95 | PC MAG EXTRA | |
| 04/20/98 | 05/05/98 | 1499 | $500.00 | Staples | 7972-8200-0274-9117 |
| 04/28/98 | 05/01/98 | 1498 | $154.12 | NYNEX | 508-697-7011 |
| 05/02/98 | 05/05/98 | 1486 | $293.99 | Office Max | Jaz Drive |
| 05/22/98 | 05/28/98 | 1509 | $635.93 | Bell Atlantic | 697-7011, 697-1891, 697-3714 |
| 05/25/98 | 06/04/98 | 1506 | $400.00 | ATS | Cell One Deposit |
| 05/25/98 | 06/04/98 | 1507 | $166.75 | ATS | Cell Phone |
| 06/16/98 | 06/25/98 | 1514 | $120.75 | ATS | Phone Caddy |
| 06/16/98 | 07/03/98 | 1524 | $52.90 | Cellular One | 17652694 |
| 07/02/98 | 07/17/98 | 1525 | $250.00 | Staples | 7972-8200-0274-9117 |
| 07/29/98 | 07/31/98 | 1532 | $692.96 | Comp USA #373 | Hard Drive |
| 07/30/98 | 08/10/98 | 1531 | $38.44 | Cell One | 17652694 |
| 07/30/98 | 08/01/98 | 1534 | $35.23 | A. T. & T | 508-697-7011 |
| 08/09/98 | 08/11/98 | 1535 | $430.30 | Comp USA #373 | Modem & ??? |

4

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 08/24/98 | 08/28/98 | 1541 | $641.88 | Bell Atlantic | 508-697-3741, 508-697-1891, 508-697-7011 |
| 08/28/98 | 08/31/98 | 1537 | $73.49 | Comp USA #373 | 508-697-3714 |
| 08/28/98 | 08/31/98 | 1538 | $293.91 | Comp USA #373 | |
| 08/31/98 | 09/02/98 | 1543 | $808.51 | Comp USA #373 | |
| 09/01/98 | 09/11/98 | 1546 | $49.12 | Cellular One | 17652694 |
| 09/10/98 | 09/16/98 | 1547 | $250.00 | Staples Credit Plan | 7972-8200-0274-9117 |
| 09/23/98 | 09/28/98 | 1553 | $41.29 | Cellular One | 17652694 |
| 10/25/98 | 11/03/98 | 1571 | $38.44 | Cell One | 17652694 |
| 10/26/98 | 11/02/98 | 1568 | $107.00 | Bell Atlantic | 508-697-1891, 470-0060 |
| 11/06/98 | 11/10/98 | 1562 | $78.75 | Computer Warehouse CD ROM | |
| 11/06/98 | 11/09/98 | 1570 | $188.96 | Comp USA #373 | |
| 11/20/98 | 11/23/98 | 1573 | $325.48 | Staples | 697-3714 Joseph Calcagno |
| 11/20/98 | 11/30/98 | 1576 | $39.25 | Cellular One | 17652694 |
| 11/20/98 | 12/01/98 | 1577 | $300.00 | Staples Credit Plan | 7972-8200-0274-9117 |

5

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 11/23/98 | 11/30/98 | 1575 | $286.57 | Bell Atlantic | 508-697-3714, 508-697-1891 |
| 11/25/98 | 12/03/98 | 1579 | $85.40 | Symantec | Software Upgrade |
| 12/23/98 | 12/30/98 | 1588 | $102.39 | Bell Atlantic | 508-697-1891 470 |
| 12/24/98 | 01/04/99 | 1590 | $38.44 | Cellular One | 17652694 |

SUMMARY 1998    **$9,485.20**

AUTHORIZED HOME-OFFICE EXPENSES

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 01/25/99 | 01/29/99 | 1601 | $369.69 | Bell Atlantic | 697-3714, 7011, 1891 |
| 02/17/99 | 02/24/99 | 1610 | $38.08 | AT&T | 508-697-7011 |
| 02/17/99 | 02/26/99 | 1611 | $300.00 | Staples | 7972-8200-0274-9117 |
| 02/17/99 | 02/22/99 | 1612 | $83.68 | Cell One | 17652694 |
| 02/17/99 | 02/22/99 | 1613 | $107.23 | Brockton Enterprise   ad | |
| 02/19/99 | 03/01/99 | 1615 | $114.46 | Bell Atlantic | 508-697-1891 |
| 03/07/99 | 03/11/99 | 1619 | $207.33 | Staples | Phone & Supp |

6

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 03/08/99 | 03/12/99 | 1617 | $29.42 | Staples | Phone no listing |
| 03/29/99 | 04/05/99 | 1629 | $175.00 | Bell Atlantic | 508-697-1891 |
| 03/29/99 | 04/05/99 | 1630 | $161.47 | Bell Atlantic | 508-697-3714 |
| 04/20/99 | 05/04/99 | 1641 | $114.24 | Bell Atlantic | 508-697-1891 |
| 05/18/99 | 06/08/99 | 1649 | 87.06 | Acco USA | Wilson Jones 180 parts |
| 05/21/99 | 05/26/99 | 1653 | $402.67 | Bell Atlantic | 697-3714, 697-7011, 697-1891 |
| 05/23/99 | 05/28/99 | 1654 | $126.91 | Cellular One | 17652694 |
| 05/23/99 | 06/02/99 | 1655 | $168.00 | Staples Credit | 7972-8200-0274-9117 |
| 06/25/99 | 06/30/99 | 1668 | $123.64 | Bell Atlantic | 508-697-1891 |
| 07/19/99 | 08/11/99 | 1691 | $83.02 | Cellular One | 17652694 |
| 07/23/99 | 08/02/99 | 1688 | $147.74 | Bell Atlantic | 5088-697-3714 |
| 08/26/99 | 09/01/99 | 1698 | $185.35 | Bell Atlantic | 508-697-1891 |
| 08/27/99 | 09/01/99 | 1697 | $35.92 | AT&T | 508-697-7011 |
| 09/23/99 | 09/27/99 | 1705 | $378.00 | Associates Capital Bank | Staples |

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 09/30/99 | 10/05/99 | 1713 | $395.79 | Bell Atlantic | 697-3714, 697-7011 |
| 11/01/99 | 11/10/99 | 1736 | $195.69 | Bell Atlantic | 508-697-1891 |
| 11/26/99 | 11/29/99 | 1740 | $209.98 | Staples CD | |

**SUMMARY 1999    $4,240.37    AUTHORIZED HOME-OFFICE EXPENSES**

In all, **$17,005.02** should be subtracted from the total loss figure set forth in the presentence report at ¶ 13 ($117,410.61) for authorized home office expenses.

2.

**Other Authorized Expenses**

Joseph Calcagno specifically recalls being given permission by the Union to incur the expenses enumerated below. These items were drawn from the government's chart, but the "Explanation" column at the far right contains a further description of the expenditure provided by the defense.

| Date Written | Date Cleared | Check # | Amount | To | Memo | Explanation |
|---|---|---|---|---|---|---|
| 10/14/98 | 10/16/98 | 1559 | $1,000.00 | George Cafe | Seminar | This was a Steward Seminar that was required under Mr. Calcagno's contract |

8

| Date Written | Date Cleared | Check # | Amount | To | Memo | Explanation |
|---|---|---|---|---|---|---|
| 12/11/98 | 12/11/98 | 1581 | $682.49 | Tweeter | | *video camera for Safety Committee; directed by members at Local meeting* |

A total of **$1,682.49** should be subtracted from the loss figure for these other authorized expenses.

3.

### Fixed Payments for Expenses

According to the Presentence Report, and the Government's Statement of the Offense, upon which the Presentence Report is largely based, "Calcagno was paid approximately $325 per month. Calcagno was also paid a flat rate of expenses of $550 per month for his position as Business Manager and an additional $550 per month for his position as Secretary-Treasurer." *See* PSR, ¶ 9; Prosecution Version of Offense Conduct, 05/18/05, p. 2.

The loss calculations prepared by the Government and by Probation include an "adjustment for authorized pay" of $300 per month per year from 1997 through 1999. This $300 adjustment falls $25 short of Mr. Calcagno's reported monthly salary of $325. In addition, the loss calculations do not take into account the "flat rate of expenses of $550 per month for his position as Business Manager and an additional $550 per month for his position as Secretary-Treasurer" which was reportedly authorized.

The following additional adjustment should be made to the loss figure reported in the Presentence Report at ¶ 13:

($25 + $550 + $550) × 12 months × 3 years = **$40,500** should be subtracted from the total loss for fixed payments.

9

4. **Payments by Mr. Calcagno to the Union**

The most recent loss calculation provided to the defense by the government in November 2004 (attached) reflects four (4) payments from Mr. Calcagno to the Union in 1999. Those payments are as follows:

| Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|
| 04/01/1999 | 04/05/1999 | 758 | $4,500.00 | Local 1162 | |
| 04/18/1999 | 04/20/1999 | 766 | $350.00 | Local 1162 | |
| 04/26/1999 | 04/26/1999 | 773 | $350.00 | Local 1162 | Tri Fund |
| 12/23/1999 | 12/24/1999 | 815 | $3,300.00 | Local 1162 | Reimb x-mas party $ not used (3 checks) |

Photocopies of the cancelled checks are attached.

Since these payments were made before Mr. Calcagno had been accused of any wrongdoing, a total of **$8,500.00** in payments by Mr. Calcagno to the Union should be subtracted from the total loss, as was done in the government's November 2004 calculations.

5. **Defendant's Proposed Loss Calculation**

The total amount of all of the authorized expenditures set forth above is **$67,687.51**. Subtracting this amount from the total loss alleged in the presentence report, $117,410.61, the actual total loss amounts to **$49,723.10**. Under U.S.S.G. § 2B1.1(b)(1)(D) (2004 ed.), this figure would result in only a **six-level increase**, rather than the eight-level increase suggested by Probation.

10

# Memorandum



*United States Attorney*
*District of Massachusetts*

| Subject<br>PROSECUTION VERSION OF OFFENSE CONDUCT<br><u>United States v. Joseph Calcagno</u>, 04-cr-10350-RCL | Date<br>May 18, 2005 |
| --- | --- |

To
John Bocon, Chief United States Probation Officer

From
Paul G. Levenson

cc.    Charles Rankin, Esq.
Rankin & Sultan
1 Commercial Wharf North
Boston, MA 02110

## I.    INTRODUCTION

On April 27, 2005, defendant Joseph Calcagno pled guilty to a 1-Count Information charging him with violating 29 U.S.C. § 439(c) (Falsification of Financial Records Required to be Kept by Labor Union).

With respect to the Sentencing Guidelines, the plea agreement between the U.S. Attorney and Calcagno includes the following provisions:

(b)    Notwithstanding his reservation of rights to argue that the United States Sentencing Guidelines are unconstitutional, Defendant agrees that he has been informed of the U.S. Attorney's position that the following Sentencing Factors apply in this case:

i.    With respect to Counts 1 of the Information the aggregate fraud loss caused by the offense and by acts and omissions that Defendant willfully caused and that were part of the same course of conduct and common scheme, was greater than $70,000 but less than $120,000, as described in U.S.S.G. §2B1.1, as referenced in U.S.S.G. §2E5.3(a)(2) (effective Nov. 1, 1999[1]);

ii.    The offense involved more than minimal planning, as described in U.S.S.G. §2B1.1, as referenced in U.S.S.G. §2E5.3(a)(2) [eff. Nov. 1, 1999], and

---

[1]    There was no separate guideline book effective on November 1, 1999. Whether the guidelines are calculated under the guidelines in effect at the time at the offense (guid

**Exhibit B**

iii.     The defendant abused a position of private trust in a manner that significantly facilitated the commission and concealment of the offense, as described in U.S.S.G. §3B1.3 [eff. Nov. 1, 1999].

It is the United States' position that, Mr. Calcagno's is entitled to a 3-level reduction in his offense level based upon his acceptance of responsibility and early notice of intention to plead guilty.

The plea agreement does <u>not</u> bind the defendant to any particular position with respect to the calculation of the Sentencing Guidelines.

II.     <u>FACTUAL BACKGROUND</u>

From 1992 through 1999 Calcagno was the Business Manager/Secretary-Treasurer of Laborer International Union, Local 1162, which represents, among others, municipal workers in the Brockton area.   For this part-time position, Calcagno was paid approximately $325.00 per month.  Calcagno was also paid a flat rate for expenses of $550 per month for his position as Business Manager and an addtional $550 per month for his position as Secretary-Treasurer.  At the same time, Calcagno was employed in a full-time union position as a Field Representative of the Massachusetts District Council of Laborers.  Altogether, Calcagno was paid a salary of approximately $60,000 per year.

Being largely unsupervised in his daily handling of Local 1162's business affairs, Holliday appropriated to himself approximately $117,000 in union funds through a variety of stratagems. Among other things: he paid himself a salary far in excess of his authorized stipend; he paid his wife for clerical work purportedly performed for the union; he paid for multiple telephone and computer lines (a single phone line was authorized) which he used for a computer service business that he was starting; and he charged the union for a variety of phantom expenses, such as rental fees for a hall that was used (gratis) for union meetings.  Calcagno has paid substantial, but by no means complete, restitution to the union.

Some time in October 1999, Calcagno was informed that the Laborers' Union District Council was about to audit his expenditures for the local. In approximately November 1999, Calcagno arranged to borrow a rubber stamp for the Campello Veteran's Fireman's Association from William Hopkins, who managed the Association's function hall. While the hall had been used on occasion for union meetings, there was no real fee associated with that use (members were charged for drinks from the bar). After thinking about it, Hopkins became suspicious of Calcagno's use of the stamp and asked for it back. Calcagno claimed he had already returned it.

When the Union auditors began checking into Calcagno's expenses, they found multiple "receipts" (approximately one per month), purporting to reflect payments to the Campello Veteran's Fireman's Association. The receipts were all on a generic printed form, which had been stamped with the Association's rubber stamp. These receipts do not look anything like the real receipt forms actually used by the Association. In actuality, Calcagno never paid the association any significant amounts of money on behalf of the union. Apart from a year-end charitable donation to the Association, Calcagno did not pay anything for the union's use of the hall.

With respect to the Calcagno's other defalcations, the evidence consists of the union's check register and cancelled checks, along with the bills that Calcagno submitted to the union as "expenses." Exhibits 1 and 2 (attached) contain a detailed listing of improperly charged items. These fall into three categories: unauthorized salary and expense payments to Calcagno (totaling $84,969.99)[2]; unauthorized expenses for personal use (such the purchase of an aquarium) and to third parties (totaling $22,118.39); and payments to Calcagno's wife[3] (totaling $10,322.23).

---

[2]     This is <u>in addition</u> to Calcagno's authorized compensation from the Union's <u>District Council</u>, for which Calcagno received regular W-2's reflecting wages of $58,000 to $66,000 per year. Calcagno's position with the <u>Local</u> was a part-time job for which he was supposed to receive approximately $300/month.

[3]     On one occasion the Local authorized Calcagno to pay his wife $350 to input data into the union's computer which had supposedly been lost in an electrical power-surge.

These unauthorized expenditures total $117,410.61.

While it has no effect on the loss calculation[4], it should be noted that Calcagno repaid approximately $42,000 (he liquidated a retirement account) to the union, after he got caught. Such efforts at restitution reflect Calcagno's acceptance of responsibility for his offense.

---

[4]     "A defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by offering to make restitution after being caught." See, e.g., United States v. Mummert, 34 F.3d 201, 204 (3d Cir. 1994) ("A defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by offering to make restitution after being caught.").

617 312 3815

# FUNDS EMBEZZLED BY JOSEPH CALCAGNO Less Repayments

110-16413-08

Government's 11/05 loss calculation

| YEAR 1997 | | | | | |
|---|---|---|---|---|---|
| **Date Written** | **Date Cleared** | **Check #** | **Amount** | **To** | **Memo** |
| 01/24/1997 | 02/03/1997 | 1340 | $128.27 | Nynex | 508-697-7011 |
| 02/09/1997 | 02/19/1997 | 1342 | $50.00 | Joseph Calcagno | MDL 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 DOB -11-4-50 |
| 02/13/1997 | 02/18/1997 | 1341 | $50.00 | Joseph Calcagno | MDL 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 DOB 11-4-50 |
| 02/24/1997 | 03/05/1997 | 1343 | $388.20 | Nynex | 508-697-7011, 508-697-3714 |
| 03/07/1997 | 03/10/1997 | 1353 | $550.00 | Joseph Calcagno | |
| 03/07/1997 | 03/10/1997 | 1357 | $550.00 | Joseph Calcagno | |
| 03/31/1997 | 03/31/1997 | 1354 | $550.00 | Joseph Calcagno | |
| 03/31/1997 | 03/31/1997 | 1355 | $400.00 | Joseph Calcagno | |
| 04/07/1997 | 04/14/1997 | 1360 | $250.00 | Joseph Calcagno | |
| 04/14/1997 | 04/14/1997 | 1358 | $312.48 | Circuit City | |
| 04/15/1997 | 04/21/1997 | 1356 | $241.48 | Service Merchandise | |
| 04/21/1997 | 05/12/1997 | 1361 | $170.07 | Phone | Telephone 117513 |
| 04/27/1997 | 04/30/1997 | 1362 | $150.00 | Joseph Calcagno | |
| 04/29/1997 | 04/29/1997 | 1363 | $550.00 | Joseph Calcagno | |
| 05/01/1997 | 05/02/1997 | 1368 | $350.00 | Joseph Calcagno | MDL 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 DOB 11-4-50 |
| 05/07/1997 | 05/12/1997 | 1371 | $550.00 | Joseph Calcagno | |
| 05/22/1997 | 05/30/1997 | 1370 | $550.00 | Joseph Calcagno | Unable to determine writing at top of check |
| 05/23/1997 | 05/23/1997 | 1373 | $550.00 | Joseph Calcagno | 508-697-3714, 508-697-7011,508-697-1891 |
| 05/23/1997 | 05/23/1997 | 1372 | $550.00 | Joseph Calcagno | |
| 05/29/1997 | 05/30/1997 | 1379 | $550.00 | Joseph Calcagno | |
| 05/31/1997 | 06/02/1997 | 1381 | $1,100.00 | Joseph Calcagno | |
| 06/02/1997 | 06/02/1997 | 1383 | $550.00 | Joseph Calcagno | |
| 06/09/1997 | 06/10/1997 | 1385 | $256.46 | Service Merchandise | |
| 06/19/1997 | 06/23/1997 | 1384 | $1,100.00 | Joseph Calcagno | |
| 06/30/1997 | 06/27/1997 | 1394 | $550.00 | Joseph Calcagno | Unknown |
| 07/01/1997 | 07/03/1997 | 1395 | $388.48 | Staples | Toner and Software |

Exhibit C

| YEAR 1997 | Date Written | Date Cleared | Check # | Amount To | Memo |
|---|---|---|---|---|---|
| | 07/10/1997 | 07/14/1997 | 1397 | $650.00 | Joseph Calcagno |
| | 07/11/1997 | 07/14/1997 | 1398 | $550.00 | Joseph Calcagno |
| | 07/18/1997 | 07/22/1997 | 1396 | $312.82 | Tropical Isle |
| | 07/18/1997 | 07/22/1997 | 1399 | $550.00 | Joseph Calcagno |
| | 07/29/1997 | 07/30/1997 | 1402 | $550.00 | Joseph Calcagno |
| | 07/29/1997 | 08/04/1997 | 1403 | $550.00 | Joseph Calcagno |
| | 08/11/1997 | 08/11/1997 | 1408 | $550.00 | Joseph Calcagno |
| | 08/19/1997 | 08/21/1997 | 1404 | $550.00 | Joseph Calcagno |
| | 08/20/1997 | 08/25/1997 | 1409 | $493.02 | Nynex | 508-697-3714, 697-7011, 697-1851 |
| | 08/22/1997 | 08/22/1997 | 1405 | $1,100.00 | Joseph Calcagno |
| | 08/22/1997 | 08/25/1997 | 1412 | $1,100.00 | Joseph Calcagno |
| | 09/04/1997 | 09/05/1997 | 1415 | $1,100.00 | Joseph Calcagno |
| | 09/05/1997 | 09/08/1997 | 1418 | $1,100.00 | Joseph Calcagno |
| | 09/10/1997 | 09/12/1997 | 1419 | $550.00 | Joseph Calcagno |
| | 09/12/1997 | 09/19/1997 | 1417 | $550.00 | Joseph Calcagno |
| | 09/22/1997 | 09/22/1997 | 1420 | $1,100.00 | Joseph Calcagno |
| | 09/22/1997 | 09/25/1997 | 1425 | $1,100.00 | Joseph Calcagno |
| | 10/03/1997 | 10/24/1997 | 1427 | $104.99 | Computer City |
| | 10/03/1997 | 10/03/1997 | 1428 | $550.00 | Joseph Calcagno |
| | 10/03/1997 | 10/07/1997 | 1429 | $550.00 | Joseph Calcagno |
| | 10/17/1997 | 10/17/1997 | 1430 | $550.00 | Joseph Calcagno |
| | 10/16/1997 | 10/17/1997 | 1431 | $550.00 | Joseph Calcagno |
| | 10/24/1997 | 10/27/1997 | 1432 | $550.00 | Joseph Calcagno |
| | 10/27/1997 | 10/28/1997 | 1435 | $550.00 | Joseph Calcagno |
| | 11/04/1997 | 11/05/1997 | 1438 | $550.00 | Joseph Calcagno |
| | 11/07/1997 | 11/10/1997 | 1431 | $550.00 | Joseph Calcagno |
| | 11/20/1997 | 11/21/1997 | 1442 | $550.00 | Donna M Doyon Calcagn |
| | 11/20/1997 | 11/21/1997 | 1443 | $1,100.00 | Joseph Calcagno | MADL-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 11-04-50 |
| | 11/20/1997 | 11/25/1997 | 1444 | $550.00 | Joseph Calcagno |
| | 11/26/1997 | 12/02/1997 | 1449 | $430.86 | Bell Atlantic |

Supplies
Books ??

Donna Doyon Calcagno

3 numbers listed appear to be the same as other bills

| Year | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| YEAR 1997 | | | | | | |
| | 11/30/1997 | 12/03/1997 | 1448 | $297.77 | Staples | |
| | 12/01/1997 | 12/10/1997 | 1451 | $286.00 | Staples | 7972-8200-0274-9117 |
| | 12/11/1997 | 12/12/1997 | 1453 | $550.00 | Joseph Calcagno | |
| | 12/12/1997 | 12/16/1997 | 1454 | $208.95 | Joseph Calcagno | Reimb. ??? Maker |
| | 12/12/1997 | 12/16/1997 | 1455 | $550.00 | Joseph Calcagno | |
| | 12/18/1997 | 12/22/1997 | 1456 | $268.14 | Tropical Isle | |
| | 12/18/1997 | 12/22/1997 | 1457 | $105.48 | Macey's | Tel 508-697-3714 |
| | 12/26/1997 | 12/29/1997 | 1460 | $550.00 | Joseph Calcagno | |
| | 12/31/1997 | | 1 | ($3,600.00) | | Adjustment for authorized pay 1997 $300 per month |

(64 detail records)
SUMMARY 1997 $29,442.87

| Year<br>YEAR | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| 1998 | | | | | | |
| | 01/09/1998 | 01/26/1998 | 1463 | $250.00 | Staples | 7972-8200-0274-9117 |
| | 01/09/1998 | 01/12/1998 | 1465 | $1,100.00 | Joseph Calcagno | |
| | 01/14/1998 | 01/16/1998 | 1469 | $550.00 | Joseph Calcagno | 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-11-4-50 |
| | 01/26/1998 | 01/27/1998 | 1468 | $550.00 | Donna Doyon Calcagno | 23977220 |
| | 01/30/1998 | 02/02/1998 | 1472 | $550.00 | Joseph Calcagno | |
| | 02/09/1998 | 02/11/1998 | 1474 | $772.23 | Donna Doyon Calcagno | Monitor | Credit Card Reimb |
| | 02/10/1998 | 02/12/1998 | 1473 | $545.96 | Comp USA #373 | |
| | 02/13/1998 | 02/17/1998 | 1475 | $550.00 | Joseph Calcagno | |
| | 02/22/1998 | 02/24/1998 | 1476 | $293.98 | Comp USA #373 | Modem |
| | 02/23/1998 | 02/25/1998 | 1477 | $52.50 | Comp USA #373 | Modem |
| | 02/24/1998 | 02/26/1998 | 1479 | $234.97 | NYNEX | 508-697-3714 |
| | 02/27/1998 | 03/05/1998 | 1481 | $550.00 | Donna Doyon Calcagno | 30-000659 |
| | 03/04/1998 | 03/06/1998 | 1480 | $1,100.00 | Joseph Calcagno | |
| | 03/04/1998 | 03/09/1998 | 1483 | $550.00 | Joseph Calcagno | |
| | 03/20/1998 | 03/23/1998 | 1485 | $550.00 | Joseph Calcagno | |
| | 03/23/1998 | 04/01/1998 | 1489 | $337.59 | NYNEX | 508-697-1891 |
| | 03/31/1998 | 04/02/1998 | 1490 | $550.00 | Donna Doyon Calcagno | 23977220 |
| | 04/03/1998 | 04/06/1998 | 1493 | $1,100.00 | Joseph Calcagno | |
| | 04/06/1998 | 04/06/1998 | 1494 | $1,100.00 | Joseph Calcagno | |
| | 04/09/1998 | 05/06/1998 | 1500 | $49.95 | PC MAG EXTRA | |
| | 04/18/1998 | 04/20/1998 | 1496 | $550.00 | Joseph Calcagno | |
| | 04/20/1998 | 05/05/1998 | 1499 | $500.00 | Staples | 7972-8200-0274-9117 |
| | 04/22/1998 | 04/23/1998 | 1482 | $1,100.00 | Joseph Calcagno | |
| | 04/28/1998 | 05/01/1998 | 1498 | $154.12 | NYNEX | 508-697-7011 |
| | 04/29/1998 | 05/07/1998 | 1501 | $550.00 | Donna Doyon Calcagno | |
| | 05/02/1998 | 05/05/1998 | 1486 | $293.99 | Office Max | Jaz Drive |
| | 05/06/1998 | 05/06/1998 | 1505 | $1,100.00 | Joseph Calcagno | |
| | 05/22/1998 | 05/26/1998 | 1508 | $1,100.00 | Joseph Calcagno | |
| | 05/22/1998 | 05/28/1998 | 1509 | $635.93 | Bell Atlantic | 697-7011, 697-1891, 697-3714 |

| Year | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| YEAR 1998 | | | | | | |
| | 05/25/1998 | 06/04/1998 | 1507 | $166.75 | ATS | Cell Phone |
| | 05/25/1998 | 06/04/1998 | 1506 | $400.00 | ATS | Cell One Deposit |
| | 05/30/1998 | 06/04/1998 | 1512 | $550.00 | Donna Doyon Calcagno | |
| | 06/09/1998 | 06/11/1998 | 1513 | $250.00 | Joseph Calcagno | |
| | 06/16/1998 | 06/25/1998 | 1514 | $120.75 | ATS | Phone Caddy |
| | 06/16/1998 | 07/03/1998 | 1524 | $52.90 | Cellular One | 17652694 |
| | 06/18/1998 | 06/24/1998 | 1515 | $550.00 | Donna Doyon Calcagno | |
| | 06/19/1998 | 06/19/1998 | 1516 | $750.00 | Joseph Calcagno | |
| | 06/19/1998 | 06/22/1998 | 1517 | $1,200.00 | Joseph Calcagno | |
| | 06/25/1998 | 06/26/1998 | 1522 | $550.00 | Joseph Calcagno | |
| | 06/26/1998 | 06/26/1998 | 1518 | $1,100.00 | Joseph Calcagno | |
| | 07/02/1998 | 07/17/1998 | 1525 | $250.00 | Staples | 7972-8200-0274-9117 |
| | 07/10/1998 | 07/13/1998 | 1526 | $200.00 | Joseph Calcagno | Del Exp |
| | 07/17/1998 | 07/20/1998 | 1529 | $350.00 | Joseph Calcagno | |
| | 07/17/1998 | 07/21/1998 | 1530 | $550.00 | Donna Doyon Calcagno | |
| | 07/23/1998 | 07/28/1998 | 1521 | $1,100.00 | Joseph Calcagno | |
| | 07/29/1998 | 07/31/1998 | 1532 | $692.96 | Comp USA #373 | Hard Drive |
| | 07/30/1998 | 08/01/1998 | 1534 | $35.23 | A.T.&T. | 508-697-7011 |
| | 07/30/1998 | 08/10/1998 | 1531 | $38.44 | Cell One | 17652694 |
| | 08/03/1998 | 08/11/1998 | 1535 | $430.30 | Comp USA #373 | Modem & ??? |
| | 08/17/1998 | 08/17/1998 | 1536 | $252.00 | Citibank Preferred Master | 5410-6548-5246-6719 Check Signature |
| | 08/19/1998 | 08/20/1998 | 1539 | $55.00 | Joseph Calcagno | |
| | 08/24/1998 | 08/25/1998 | 1540 | $550.00 | Donna Doyon Calcagno | |
| | 08/24/1998 | 08/28/1998 | 1541 | $641.88 | Bell Atlantic | 508-697-3741, 508-697-1891, 508-697-7011 |
| | 08/26/1998 | 08/31/1998 | 1537 | $73.49 | Comp USA #373 | 508-697-3714 |
| | 08/28/1998 | 08/31/1998 | 1538 | $293.91 | Comp USA #373 | |
| | 08/29/1998 | 08/31/1998 | 1544 | $550.00 | Joseph Calcagno | |
| | 08/31/1998 | 09/02/1998 | 1543 | $808.51 | Comp USA #373 | |
| | 09/01/1998 | 09/11/1998 | 1546 | $49.12 | Cellular One | 17652694 |

| Year | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| YEAR 1998 | | | | | | |
| | 09/10/1998 | 09/16/1998 | 1547 | $250.00 | Staples Credit Plan | 7972-8200-0274-9117 |
| | 09/18/1998 | 09/21/1998 | 1548 | $1,100.00 | Joseph Calcagno | |
| | 09/21/1998 | 09/21/1998 | 1549 | $550.00 | Donna Doyon Calcagno | |
| | 09/23/1998 | 09/28/1998 | 1553 | $41.29 | Cellular One | 17652694 |
| | 09/23/1998 | 09/25/1998 | 1550 | $1,100.00 | Joseph Calcagno | |
| | 09/23/1998 | 09/25/1998 | 1554 | $550.00 | Joseph Calcagno | |
| | 09/25/1998 | 09/25/1998 | 1551 | $1,100.00 | Joseph Calcagno | |
| | 10/01/1998 | 10/05/1998 | 1559 | $1,000.00 | George Café | Seminar |
| | 10/14/1998 | 10/16/1998 | 1561 | $1,100.00 | Joseph Calcagno | |
| | 10/24/1998 | 10/26/1998 | 1571 | $33.44 | Cell One | 17652694 |
| | 10/25/1998 | 11/03/1998 | 1563 | $550.00 | Donna Doyon Calcagno | |
| | 10/26/1998 | 10/27/1998 | 1568 | $107.00 | Bell Atlantic | 508-697-1891, 470-0060 |
| | 11/06/1998 | 11/02/1998 | 1562 | $78.75 | Computer Warehouse | CD ROM |
| | 11/06/1998 | 11/10/1998 | 1570 | $188.96 | Comp USA #373 | |
| | 11/09/1998 | 11/09/1998 | 1572 | $1,100.00 | Joseph Calcagno | |
| | 11/20/1998 | 11/30/1998 | 1576 | $39.25 | Cellular One | 17662694 |
| | 11/20/1998 | 12/01/1998 | 1577 | $300.00 | Staples Credit Plan | 7972-8200-0274-9117 |
| | 11/20/1998 | 11/20/1998 | 1574 | $1,100.00 | Joseph Calcagno | |
| | 11/23/1998 | 11/20/1998 | 1573 | $325.48 | Staples | 697-3714 joseph calcagno |
| | 11/23/1998 | 11/23/1998 | 1575 | $286.57 | Bell Atlantic | 508-697-3714, 508-697-1891 |
| | 11/25/1998 | 12/03/1998 | 1579 | $85.40 | Symantec | Software Upgrade |
| | 11/30/1998 | 12/09/1998 | 1582 | $550.00 | Donna Calcagno | |
| | 12/04/1998 | 12/18/1998 | 1583 | $1,367.32 | Citibank Preferred Master | 5410-6549-5246-6719 mother board tri fund airfare |
| | 12/05/1998 | 12/07/1998 | 1580 | $1,100.00 | Joseph Calcagno | |
| | 12/11/1998 | 12/11/1998 | 1581 | $682.49 | Tweeter | |
| | 12/14/1998 | 12/15/1998 | 1586 | $1,100.00 | Joseph Calcagno | |
| | 12/18/1998 | 12/18/1998 | 1585 | $1,100.00 | Joseph Calcagno | |
| | 12/23/1998 | 12/28/1998 | 1584 | $137.93 | Cheers | |
| | 12/23/1998 | 12/30/1998 | 1588 | $102.39 | Bell Atlantic | xmas party 508-697-3714 470 |

| Year | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| **YEAR** | 1998 | | | | | |
| | 12/24/1998 | 01/04/1999 | 1500 | $38.44 | Cellular One | 17652694 |
| | 12/28/1998 | 12/29/1998 | 1587 | $550.00 | Donna Doyon Calcagno | |
| | 12/31/1998 | | 2 | ($3,600.00) | | Adjustment for authorized pay 1998 $300 per month. |
| | 12/31/1998 | | 4 | ($350.00) | Donna Calcagno | Adjustment for authorized input of data for Local computer |

**SUMMARY 1998 $43,902.17**

**(91 detail records)**

| Year | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| YEAR 1999 | | | | | | |
| | 01/22/1999 | 01/25/1999 | 1595 | $1,100.00 | Joseph Calcagno | PSG "date written should have been 99 but was written 98" |
| | 01/22/1999 | 01/22/1999 | 1593 | $1,100.00 | Joseph Calcagno | Fl?ed |
| | 01/25/1999 | 01/29/1999 | 1601 | $369.69 | Bell Atlantic | 697-3714, 7011, 1891 |
| | 01/25/1999 | 02/05/1999 | 1602 | $250.00 | Joseph Calcagno | Exp ??? "date written should have been 99 but was written 98" |
| | 01/26/1999 | 01/26/1999 | 1600 | $550.00 | Joseph Calcagno | PSG |
| | 01/29/1999 | 02/01/1999 | 1603 | $550.00 | Donna Calcagno | |
| | 02/06/1999 | 02/08/1999 | 1604 | $200.00 | Joseph Calcagno | meeting |
| | 02/09/1999 | 02/09/1999 | 1599 | $550.00 | Joseph Calcagno | PSG |
| | 02/17/1999 | 02/24/1999 | 1610 | $38.08 | A. T. & T. | 508-697-7011 |
| | 02/17/1999 | 02/22/1999 | 1613 | $107.23 | Brockton Enterprise | 6973714 |
| | 02/17/1999 | 02/22/1999 | 1612 | $83.68 | Cell One | 17662694 |
| | 02/17/1999 | 02/26/1999 | 1611 | $300.00 | Staples | 7972-8200-0274-9117 |
| | 02/17/1999 | 02/17/1999 | 1594 | $350.00 | Joseph Calcagno | |
| | 02/19/1999 | 03/01/1999 | 1615 | $114.46 | Bell Atlantic | 508-697-1891 |
| | 02/20/1999 | 02/22/1999 | 1609 | $750.00 | Joseph Calcagno | |
| | 02/22/1999 | 02/22/1999 | 1614 | $550.00 | Donna Calcagno | |
| | 02/25/1999 | 03/01/1999 | 1608 | $550.00 | Joseph Calcagno | |
| | 02/26/1999 | 03/01/1999 | 1607 | $550.00 | Joseph Calcagno | |
| | 02/28/1999 | 03/02/1999 | 1616 | $550.00 | Joseph Calcagno | |
| | 03/05/1999 | 03/05/1999 | 1618 | $550.00 | Joseph Calcagno | |
| | 03/07/1999 | 03/11/1999 | 1619 | $207.33 | Staples | |
| | 03/08/1999 | 03/12/1999 | 1617 | $29.42 | Staples | Phone & Supp |
| | 03/11/1999 | 03/12/1999 | 1620 | $550.00 | Joseph Calcagno | Phone no listing |
| | 03/15/1999 | 03/16/1999 | 1621 | $150.00 | Joseph Calcagno | |
| | 03/17/1999 | 03/17/1999 | 1624 | $550.00 | Joseph Calcagno | |
| | 03/18/1999 | 03/19/1999 | 1627 | $400.00 | Joseph Calcagno | |
| | 03/24/1999 | 03/26/1999 | 1625 | $75.00 | Joseph Calcagno | |
| | 03/29/1999 | 04/05/1999 | 1630 | $161.47 | Bell Atlantic | 508-697-3714 |

| Year | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| **YEAR** 1999 | | | | | | |
| | 03/29/1999 | 04/05/1999 | 1629 | $175.00 | Bell Atlantic | 508-697-1891 |
| | 03/29/1999 | 03/29/1999 | 1628 | $200.00 | Joseph Calcagno | |
| | 04/01/1999 | 04/05/1999 | 758 | ($4,500.00) | Local 1162 | |
| | 04/10/1999 | 04/21/1999 | 1633 | $200.00 | Joseph Calcagno | |
| | 04/18/1999 | 04/20/1999 | 766 | ($350.00) | Local 1162 | |
| | 04/20/1999 | 04/22/1999 | 1632 | $100.00 | Joseph Calcagno | |
| | 04/20/1999 | 04/27/1999 | 1639 | $350.00 | Joseph Calcagno | |
| | 04/20/1999 | 05/04/1999 | 1641 | $114.24 | Bell Atlantic | 508-697-1891 |
| | 04/22/1999 | 04/23/1999 | 1637 | $300.00 | Joseph Calcagno | |
| | 04/26/1999 | 04/26/1999 | 773 | ($350.00) | Local 1162 | |
| | 05/03/1999 | 05/05/1999 | 1644 | $250.00 | Joseph Calcagno | |
| | 05/13/1999 | 05/14/1999 | 1645 | $225.00 | Joseph Calcagno | |
| | 05/15/1999 | 05/17/1999 | 1646 | $550.00 | Joseph Calcagno | |
| | 05/18/1999 | 06/08/1999 | 1649 | $87.06 | Acco USA | Wilson Jones 180 parts |
| | 05/18/1999 | 05/18/1999 | 1647 | $550.00 | Joseph Calcagno | |
| | 05/19/1999 | 05/20/1999 | 1648 | $550.00 | Joseph Calcagno | |
| | 05/21/1999 | 05/26/1999 | 1653 | $402.67 | Bell Atlantic | 697-3714, 697-7011, 697-1891 |
| | 05/23/1999 | 05/28/1999 | 1654 | $126.91 | Cellular One | 17652694 |
| | 05/23/1999 | 06/02/1999 | 1655 | $168.00 | Staples Credit | 7972-8200-0274-9117 |
| | 05/23/1999 | 06/04/1999 | 1657 | $250.00 | Joseph Calcagno | |
| | 05/26/1999 | 05/27/1999 | 1656 | $100.00 | Joseph Calcagno | |
| | 05/28/1999 | 06/01/1999 | 1658 | $250.00 | Joseph Calcagno | |
| | 06/02/1999 | 06/02/1999 | 1659 | $550.00 | Joseph Calcagno | |
| | 06/03/1999 | 06/04/1999 | 1660 | $550.00 | Joseph Calcagno | |
| | 06/04/1999 | 06/07/1999 | 1662 | $550.00 | Joseph Calcagno | |
| | 06/07/1999 | 06/08/1999 | 1663 | $550.00 | Joseph Calcagno | |
| | 06/07/1999 | 06/17/1999 | 1683 | $250.00 | Joseph Calcagno | |
| | 06/11/1999 | 06/17/1999 | 1685 | $250.00 | Joseph Calcagno | Meeting |
| | 06/11/1999 | 06/11/1999 | 1666 | $550.00 | Joseph Calcagno | |
| | 06/15/1999 | 06/17/1999 | 1667 | $250.00 | Joseph Calcagno | ???? |

| Year | Date Written | Date Cleared | Check # | Amount | To | Memo |
|---|---|---|---|---|---|---|
| YEAR | 1999 | | | | | |
| | 06/16/1999 | 06/16/1999 | 1664 | $550.00 | Joseph Calcagno | |
| | 06/18/1999 | 06/18/1999 | 1669 | $200.00 | Joseph Calcagno | |
| | 06/22/1999 | 06/23/1999 | 1670 | $400.00 | Joseph Calcagno | |
| | 06/25/1999 | 06/30/1999 | 1668 | $123.64 | Bell Atlantic | ?????? |
| | 06/25/1999 | | | $550.00 | Joseph Calcagno | 508-697-1891 |
| | 06/28/1999 | 06/28/1999 | 1673 | | | |
| | 06/28/1999 | 06/29/1999 | 1676 | $1,100.00 | Donna Doyon Calcagno | |
| | 06/29/1999 | 06/30/1999 | 1671 | $250.00 | Joseph Calcagno | Meeting |
| | 06/30/1999 | 07/01/1999 | 1672 | $550.00 | Joseph Calcagno | ?????? |
| | 07/02/1999 | 07/06/1999 | 1674 | $550.00 | Joseph Calcagno | |
| | 07/05/1999 | 07/06/1999 | 1681 | $200.00 | Joseph Calcagno | |
| | 07/14/1999 | 07/14/1999 | 1682 | $500.00 | Joseph Calcagno | |
| | 07/14/1999 | 07/16/1999 | 1683 | $100.00 | Joseph Calcagno | |
| | 07/19/1999 | 08/11/1999 | 1691 | $83.02 | Cellular One | Scituate |
| | 07/19/1999 | 08/02/1999 | 1688 | $147.74 | Bell Atlantic | 17662694 |
| | 07/23/1999 | 07/28/1999 | 1689 | $360.00 | Joseph Calcagno | 508-697-3714 |
| | 07/27/1999 | 08/05/1999 | 1692 | $650.00 | Joseph Calcagno | meeting |
| | 08/04/1999 | 08/12/1999 | 1693 | $1,100.00 | Joseph Calcagno | meeting |
| | 08/11/1999 | 08/16/1999 | 1694 | $200.00 | Joseph Calcagno | fixed |
| | 08/14/1999 | 08/18/1999 | 1695 | $1,000.00 | Joseph Calcagno | |
| | 08/17/1999 | 08/26/1999 | 1696 | $750.00 | Joseph Calcagno | ??? |
| | 08/25/1999 | 09/01/1999 | 1696 | $185.35 | Bell Atlantic | meeting |
| | 08/26/1999 | 08/30/1999 | 1698 | $1,650.00 | Joseph Calcagno | 508-697-1891 |
| | 08/27/1999 | 09/01/1999 | 1697 | $35.92 | A.T.&T. | PSG Dray |
| | 08/30/1999 | 08/30/1999 | 1699 | $550.00 | Joseph Calcagno | 508-697-7011 |
| | 08/31/1999 | 09/02/1999 | 1703 | $550.00 | Joseph Calcagno | ?? |
| | 09/01/1999 | 09/03/1999 | 1704 | $550.00 | Joseph Calcagno | ?? |
| | 09/03/1999 | 09/09/1999 | 1708 | $550.00 | Joseph Calcagno | ?? Could be "cc" |
| | 09/08/1999 | 09/13/1999 | 1709 | $550.00 | Joseph Calcagno | fixed |
| | 09/17/1999 | 09/17/1999 | 1710 | $550.00 | Joseph Calcagno | cc |

| Year | Date Written | Date Cleared | Check # | Amount To | Memo |
|------|-------------|-------------|---------|-----------|------|
| YEAR 1999 | | | | | |
| | 09/21/1999 | 09/21/1999 | 1711 | $555.00 | Joseph Calcagno | cc |
| | 09/22/1999 | 09/30/1999 | 1717 | $300.00 | Joseph Calcagno | cc |
| | 09/22/1999 | 09/23/1999 | 1714 | $750.00 | Joseph Calcagno | ?eeting 9/28 |
| | 09/23/1999 | 09/27/1999 | 1705 | $378.00 | Associates Capital Bank | Staples |
| | 09/29/1999 | 09/29/1999 | 1715 | $100.00 | Joseph Calcagno | fixed |
| | 09/30/1999 | 10/05/1999 | 1713 | $395.79 | Bell Atlantic | 697-3714, 697-7011 |
| | 09/30/1999 | 10/01/1999 | 1716 | $1,100.00 | Joseph Calcagno | 2 cc |
| | 10/01/1999 | 10/04/1999 | 1720 | $1,100.00 | Joseph Calcagno | fixed |
| | 10/04/1999 | 10/05/1999 | 1723 | $650.00 | Joseph Calcagno | 1 cc |
| | 10/04/1999 | 10/04/1999 | 1712 | $1,100.00 | Joseph Calcagno | 2 cc |
| | 10/08/1999 | 10/12/1999 | 1721 | $150.00 | Joseph Calcagno | fixed |
| | 10/18/1999 | 10/19/1999 | 1727 | $150.00 | Joseph Calcagno | mc |
| | 10/20/1999 | 10/25/1999 | 1722 | $400.00 | Joseph Calcagno | W. Gannon not certain of memo |
| | 10/26/1999 | 11/04/1999 | 1728 | $250.00 | Joseph Calcagno | fixed |
| | 10/26/1999 | 10/27/1999 | 1726 | $850.00 | Joseph Calcagno | meeting |
| | 10/26/1999 | 11/01/1999 | 1729 | $150.00 | Joseph Calcagno | cj |
| | 10/30/1999 | 11/01/1999 | 1730 | $250.00 | Joseph Calcagno | BH |
| | 11/01/1999 | 11/03/1999 | 1731 | $150.00 | Joseph Calcagno | meeting 10/26 |
| | 11/01/1999 | 11/01/1999 | 1732 | $150.00 | Joseph Calcagno | cc |
| | 11/01/1999 | 11/10/1999 | 1736 | $195.69 | Bell Atlantic | 508-697-1891 |
| | 11/04/1999 | 11/04/1999 | 1733 | $250.00 | Joseph Calcagno | fixed |
| | 11/11/1999 | 11/15/1999 | 1734 | $550.00 | Joseph Calcagno | fixed |
| | 11/12/1999 | 11/15/1999 | 1735 | $350.00 | Joseph Calcagno | BS |
| | 11/26/1999 | 11/29/1999 | 1740 | $209.98 | Staples | CD |
| | 11/30/1999 | 11/03/1999 | 1742 | $1,100.00 | Joseph Calcagno | B.M. & Sec'y-Treas expenses |
| | 11/30/1999 | 12/09/1999 | 1750 | $550.00 | Joseph Calcagno | Year end exp |
| | 11/30/1999 | 11/30/1999 | 1746 | $1,100.00 | Joseph Calcagno | B.M. & Sec'y-Treas expenses |
| | 12/06/1999 | 12/09/1999 | 1748 | $515.20 | Syms | xmas mcnaly |
| | 12/23/1999 | 12/24/1999 | 815 | ($3,300.00) | Local 1162 | Reimb x-mas party $not used 3(checks) |

| Year | Date Written | Date Cleared | Check # | Amount To | Memo |
|------|------|------|------|------|------|
| YEAR  1999 | | | | | |
| | 12/31/1999 | | 5 | ($300.00)  Campello fund | Adjustment for hall rental. Hall not certain of the exact amount this is the maximum amount |
| | 12/31/1999 | | 3 | ($3,600.00) | Adjustment for authorized pay 1999 $300 per month |

(117 detail records)
SUMMARY 1999  $35,565.57

| Year | Date Written | Date Cleared | Check # | Amount To | Memo |
|------|--------------|--------------|---------|-----------|------|
| YEAR 2000 | | | | | |
| | 05/30/2000 | 05/30/2000 | 0 | 42,278.33) Local 1162 | Recovery of Union Funds by District Council |
| SUMMARY 2000 ($42,278.33) | | | | | |
| (1 detail record) | | | | | |

Grand Total   $66,632.28

— still owed after B'd OK (above) for bal. to Union
to Union        from B. deferred comp. plan

**CLINIC NOTE**

August 20, 2005
Calcagno, Joseph
Acct #: 4695

Mr. Calcagno is a 54-year-old white male with history of bilateral Bell's palsy who developed severe neck pain and left arm pain. He describes pain radiating into the third, fourth, and fifth digits of his left arm. He denies any trauma. He notices that has been dropping of objects from his left hand. He also has had intermittent lower back discomfort as well. He underwent an MRI scan, which revealed extensive degenerative disc disease at C4-C5, C5-C6, and C6-C7 as well as C3-C4 in the left. His one elbow is symmetric. He has 1+ biceps on the right side, 04 on the left and 04 triceps on the left as well. He has 2/4 on the right and 1/4 on the right brachioradialis. Negative Hoffman sign. No clonus. He has decreased sensation in the ulnar nerve distribution on the left side. His motor strength bilaterally in deltoid, biceps, triceps, wrist extension-flexion, finger flexion-extension is 5/5, intrinsics are 4/5 bilaterally. In terms of his lower extremity, he has good hip flexion, abduction-adduction, knee extension-flexion, dorsiflexion, and plantarflexion.

At this time, we discussed at length the risks and benefits of surgical intervention versus nonoperative intervention with physical therapy and potentially use of epidural steroid injections. I have also recommended that he obtain a lumbar spine, MRI scan, as he has not had one recently and is having more lower back pain and intermittent sciatic symptoms as well. The risks of epidural steroid injections and physical therapy were carefully explained to him and will attempt this as first treatment. Of note, he is currently working as a network engineer. He denies any trauma. He does not exercise routinely, does not smoke. He has history of measles, scarlet fever, chickenpox, and arthritis. He had abdominal exploration and appendectomy in the past and has a family history of arthritis. He has no Waddell's signs on examination and has a negative straight leg raise, normal vascular examination. No evidence of a Hoffman sing, no Babinski, and no clonus are present and has again ulnar paresthesias on the left hand. We will see him back if his nonoperative intervention for the cervical spine does not improve his neck pain and left arm symptoms.

Paul A. Glazer, M.D.

Accurate Transcriptions
11117630X10/calcjo/MTT09
DD/DT: 08/20/2005

Exhibit D